UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RAHN A. JACOBS,                    :
                                   :
        Plaintiff                  :      CIVIL NO. 1:15-CV-00686
                                   :
     vs.                           :
                                   :
DR. J. LISIAK, et al.,             :      (Judge Kane)
                                   :
        Defendants                 :

**MEMORANDUM**

I.   **Background**

        Before the court is a civil rights action filed under 42
U.S.C. § 1983 by Rahn A. Jacobs, an inmate at the State
Correctional Institution at Mahanoy, Frackville, Pennsylvania
("SCI-Mahanoy").   Jacobs claims he was provided inadequate medical
care in violation of his rights under the Eighth Amendment of the
United States Constitution.   There are two groups of defendants
each represented by counsel.   The first group, which the court
will refer to as the "Corrections Defendants," consists of the
following four individuals employed at SCI-Mahanoy: (1) John
Kerestes, Superintendent; (2) Karen Holly, a registered nurse
supervisor; (3) Hugh Beggs, Deputy Superintendent; and (4) John
Steinhart, Health Care Administrator.   The second group, which the
court will refer to as the "Medical Defendants," consists of
Correct Care Solutions, LLC, and the following two individuals who
are not employed by the Pennsylvania Department of Corrections but
apparently perform work for the Department of Corrections on a

contract basis: (1) John Lisiak, D.O.; and (2) Dr. Stephen Weiner, who is alleged to be the Regional Medical Director of Correct Care Solutions, LLC.[1]  On June 3, 2015, the Corrections Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 20) and a brief in support thereof. Jacobs filed a brief in opposition (Doc. 24) on June 24, 2015. The motion became ripe for disposition on August 10, 2015 when the Corrections Defendants elected not to file a reply brief.  For the reasons set forth below, the Corrections Defendants' motion to dismiss will be granted.[2]

## II.  Motion to Dismiss

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)).  While a complaint need only contain "a short

---

1.  There are no allegation in Jacobs' complaint that Dr. Weiner had any personal involvement in the treatment of Jacobs.

2.  Also, pending before the court is a motion to dismiss filed by the Medical Defendants. Doc. 22.  Jacobs failed to file a brief in opposition to that motion and although he was directed to do so on October 23, 2015, and warned that failure to do so would result in dismissal of his claims against the Medical Defendants, he has still not filed an opposition brief.

and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Id</u>. at 570, 550 U.S. 544.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) (quoting <u>Twombly</u>, 550 U.S. at 556). "[L]abels and conclusions" are not enough, <u>Twombly</u>, 550 U.S. at 555, and a court  "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" <u>Id</u>. (quoted case omitted).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." <u>Fowler</u>, <u>supra</u>, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. <u>Id</u>. at 210-11.  Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" <u>Id</u>. at 211 (quoted case omitted).

In addition, because Jacobs complains about "prison conditions," the screening provisions, 28 U.S.C. § 1915(e), of the Prison Litigation Reform Act ("PLRA") apply,[3] given that Jacobs

---

3.  Section 1915(e)(2), which was created by § 804(a)(5) of the Act, provides:

(2) Notwithstanding any filing fee, or any portion
(continued...)

was granted <u>in</u> <u>forma</u> <u>pauperis</u> status to pursue this suit.  The
court's obligation to dismiss a complaint under the PLRA screening
provisions for complaints that fail to state a claim is not
excused even after defendants have filed a motion to dismiss. <u>See</u>,
e.g., <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000).
Hence, if there is a ground for dismissal that was not relied upon
by a defendant in a motion to dismiss, the court may nonetheless
*sua sponte* rest its dismissal upon such ground pursuant to the
screening provisions of the PLRA. <u>See Lopez</u>; <u>Dare v. U.S.</u>, Civil
No. 06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007),
aff'd, 264 F. App'x 183 (3d Cir.2008).

**III.    <u>Discussion</u>**

        The Corrections Defendants argue, *inter alia*, that the
claims against them should be dismissed because the allegations if
true are insufficient to impute § 1983 liability for deliberate
indifference.  The court finds merit in that argument.

        A plaintiff, in order to state a viable § 1983 claim,
must plead two essential elements:  1) that the conduct complained
of was committed by a person acting under color of state law, and
2) that said conduct deprived the plaintiff of a right, privilege,

---

3.  (...continued)
    thereof, that may have been paid, the court shall
    dismiss the case at anytime if the court determines
    that (A) the allegation of poverty is untrue; or (B)
    the action or appeal (I) is frivolous or malicious;
    (ii) fails to state a claim on which relief may be
    granted; or (iii) seeks monetary relief against a
    defendant who is immune from such relief.

or immunity secured by the Constitution or laws of the United
States.  <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575,
580-581 (2003);  <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 638
(3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135,
1141-42 (3d Cir. 1990).

A defendant's conduct must have a close causal
connection to plaintiff's injury in order for § 1983 liability to
attach.  <u>Martinez v. California</u>, 444 U.S. 277, 285 (1980).[4]  A
prerequisite for a viable civil rights claim is that a defendant
directed, or knew of and acquiesced in, the deprivation of a
plaintiff's constitutional rights.  <u>See</u> <u>Monell v. Department of
Social Serv. of the City of N.Y.</u>, 436 U.S. 658, 694-95 (1978); <u>Gay
v. Petsock</u>, 917 F.2d 768, 771 (3d Cir. 1990); <u>Rode v.
Dellarciprete</u>, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

Jacobs must allege that each named defendant was
personally involved in the events or occurrences that underlie the
claim.  <u>See</u> <u>Atkinson v. Taylor</u>, 316 F.3d 257 (3d Cir. 2003),
(citations omitted).  Liability may not be imposed under Section
1983 on the principle of respondeat superior.  <u>Capone v.
Marinelli</u>, 868 F.2d 102, 106 (3d Cir. 1989) (citing <u>Hampton v.
Holmesburg Prison Officials</u>, 546 F.2d 1077, 1082 (3d Cir. 1976)).
Rather, "supervisory personnel are only liable for the § 1983

---

4.  The <u>Martinez</u> court explained: "Although a § 1983 claim has
been described as 'a species of tort liability,' <u>Imbler v.
Pachtman</u>, 424 U.S. 409, 417 [(1976)], it is perfectly clear that
not every injury in which a state official has played some part
is actionable under that statute."  <u>Id.</u>

violations of their subordinates if they knew of, participated in
or acquiesced in such conduct." Id. at 106 n.7.

Moreover, a defendant cannot be held liable under § 1983
for the review and denial of grievances because "the failure of a
prison official to act favorably on an inmate's grievance is not
itself a constitutional violation." Rauso v. Vaughn, Civil No.
96-6977, 2000 WL 873285, at *16 (E.D.Pa., June 26, 2000); see also
Overholt v. Unibase Data Entry, Inc., 221 F.3d 1335 (Table), 2000
WL 799760, at *3 (6th Cir.2000) ("The defendants were not
obligated to 'properly' respond to Overholt's grievances because
there is no inherent constitutional right to an effective prison
grievance procedure. Hence, his allegations that the defendants
did not properly respond to his grievances simply do not rise to
the level of a constitutional violation.") (citations omitted);
Mitchell v. Keane, 974 F.Supp. 332, 343 (S.D.N.Y.1997) ("it
appears from the submissions before the court that Mitchell filed
grievances, had them referred to a prison official, and received a
letter reporting that there was no evidence to substantiate his
complaints. Mitchell's dissatisfaction with this response does not
constitute a cause of action."); Caldwell v. Beard, Civil No.
2:07-CV-727, 2008 WL 2887810, at *4 (W.D.Pa. July 23, 2008) ("Such
a premise for liability [i.e., for performing a role in the
grievance process] fails as a matter of law."), aff'd, 324 F.
App'x 186, 2009 WL 1111545 (3d Cir. April 27, 2009); Caldwell v.
Hall, Civil No. 97-8069, 2000 WL 343229, at *2 (E.D.Pa. March 31,

2000) ("The failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."); Orrs v. Comings, Civil No. 92-6442, 1993 WL 418361, at *2 (E.D.Pa. Oct.13, 1993) ("But an allegation that a defendant failed to act on a grievance or complaint does not state a Section 1983 claim."); Jefferson v. Wolfe, Civil No. 04-44, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) ("These allegations [of denying grievances or grievance appeals] are insufficient to establish such Defendants' personal involvement in the challenged conduct under Section 1983. See Watkins v. Horn, 1997 WL 566080 at * 4 (E.D.Pa..[sic] 1997) (concurrence in an administrative appeal process is not sufficient to establish personal involvement)"). It is clear that addressing grievances is insufficient to establish the personal involvement necessary to impute § 1983 liability.

        To establish an Eighth Amendment claim under § 1983, Jacobs must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 827 (1994) (citing Helling v. McKinney, 509 U.S. 25 (1993)); Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. 97 (1976)). In other words, the official must know of and disregard an excessive risk to inmate health or safety. Natale v. Camden County Corr. Facility, 318 F.3d at 582; Farmer, 511 U.S. at 837. This standard "affords considerable latitude to prison medical authorities in the diagnosis and

treatment of the medical problems of inmate patients.  Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment. . . which remains a question of sound professional judgment.'"  Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa. 1996) (quoting Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)).

Claims based upon the Cruel and Unusual Punishments Clause have both objective and subjective components.  Wilson v. Seiter, 501 U.S. at 298.  Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component.  Id.  The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind".  Id.

The objective component of an Eighth Amendment medical care claim, i.e., whether a plaintiff's medical needs were serious, has its roots in contemporary standards of decency.  Hudson v. McMillian, 503 U.S. 1 (1992).  "A medical need is serious if it is one that has been diagnosed by a physician as [mandating] treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991); accord Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987); Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981); West v. Keve, 571 F.2d 158, 162-63 n.6 (3d Cir. 1978).  The

8

serious medical need element contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain. See Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d at 347; Archer v. Dutcher, 733 F.2d 14, 16–17 (2d Cir. 1984); Todaro v. Ward, 565 F.2d 48, 52 (2d Cir. 1977).

A disagreement with the course of medical treatment does not serve as a predicate to liability under § 1983. See, White v. Napoleon, 897 F.2d at 108–110(No deliberate indifference claim is stated when a doctor disagrees with the professional judgment of another doctor since "[t]here may, for example, be several acceptable ways to treat an illness."); Inmates of Allegheny County Jail v. Pierce, 612 F.2d at 762(claim for deliberate indifference does not arise just because one doctor disagrees with the diagnosis of another). Furthermore, a complaint that a physician or a medical department was "negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106. More than two decade ago, the Third Circuit held that "[w]hile the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990); see also Spruill, 372 F.3d at 235 ("Allegations of medical malpractice are not sufficient to establish a Constitutional violation.").

When an inmate is provided with medical care and the
dispute is over the adequacy of that care, no Eighth Amendment
claim exists.  White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir.
1990).  "A medical decision not to order an X-ray, or like
measures, does not represent cruel and unusual punishment.  At
most it is medical malpractice...."  Estelle, 429 U.S. at 107.  A
mere difference of opinion between the inmate and the prison's
medical staff regarding the diagnosis or treatment that the inmate
receives does not support a claim of cruel and unusual punishment.
See McFadden v. Lehman, 968 F. Supp. 1001 (M.D. Pa. 1997); Young
v. Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1992).  Additionally,
a non-physician defendant cannot be considered deliberately
indifferent for failing to respond to an inmate's medical
complaints when the inmate is already receiving treatment from the
prison's medical staff.  See Durmer v. O'Carroll, 991 F.2d 64, 69
(3d Cir. 1993).  The key question is whether the defendant has
provided the plaintiff with some type of treatment, despite
whether it is what the plaintiff wants.  Farmer v. Carlson, 685 F.
Supp. 1335, 1339 (M.D. pa. 1988).

In the complaint, Jacob alleges that he developed a
urinary tract infection in or around January, 2014, which was
caused by a surgically implanted supra pubic catheter, and which
failed to respond to various antibiotics. Doc. 1, Complaint, at 7-
10. Over the next several months, Jacobs was examined by a
urologist, Dr. Mahendra Pujara, on at least four occasions for the

infection. Id.  During one of the visits with Dr. Pujara in August, 2014, Jacob underwent surgery to remove and replace his supra pubic catheter. Id.  Following this procedure, Dr. Pujara allegedly advised Dr. Lisiak that additional surgery would be required for permanent removal of the catheter and laser surgery of the urethral canal. Id.  However, before undertaking the surgery, Dr. Pujara advised the prison medical department that the infection must be eliminated and, in that regard, recommended on October 22, 2014, that Jacob be placed on a broad-spectrum antibiotic, Meropenem. Id.  Jacobs alleges that instead of treating him with Meropenem Dr. Lisiak and the medical department at SCI-Mahanoy treated him with a cheaper and less effective antibiotic, Amikacin (identified by Jacob as "Amacaysin"). Id.  According to Jacob, In November 2014, he was administered Amikacin which was not effective and resulted in an exacerbation of his urinary tract infection. Id.  In December, 2014, Jacob was seen by Dr. Lisiak, and because of Jacob's complaints of severe pain and burning with urination, Dr. Lisiak ordered additional lab work, x-rays and an EKG. Id.  On December 15, 2014, it was reported that the recent blood work was positive for an antibiotic-resistant staph bacterial infection. Id.  On December 17, 2014, Dr. Pujara treated Jacobs with Invanz, another antibiotic, one hour prior to performing laser surgery to surgically implant two new catheters.

11

Id. Jacobs contends that the Corrections Defendants ignored the recommendation of Dr. Pujara.  This failure resulted in his infection failing to resolve the unnecessary delay of his surgery. There are no allegations that Defendants Kerestes, Beggs, Steinhart and Holly had any personal involvement in the medical treatment decisions of Dr. Lisiak. Their only involvement was responding to grievances filed by Jacobs.

Attached to Jacobs' complaint was a hand-written version of the Initial Review Response to a grievance Jacobs filed regarding his condition, in which Defendant Holly, as grievance officer, states that Jacobs was administered Meropenam. Jacobs' complaint states the opposite, that he believed he received Amikacin. Doc. 1-1, Exhibit A attached to Complaint, at 5-6.  The Initial Review Response indicates that Jacobs was receiving medical care, although the care was not what Jacob desired.

Assuming, without deciding, that Jacobs' medical need was serious in the constitutional sense, the allegations in the complaint illustrate that Jacobs received medical treatment.  At best, Jacobs' complaint demonstrates his disagreement with the scope and extent of treatment by Dr. Lisiak, the attending medical professional.  There are no allegations in the complaint that Defendants Holly, Beggs, Kerestes, Steinhart, and Weiner had any involvement in the decision as to how to best treat Jacobs.

The allegations contained within the complaint establish meaningful efforts by Dr. Lisiak to provide Jacobs with necessary medical care, and that Dr. Lisiak had an attendant mental state that falls short of deliberate indifference.

Jacobs fails to allege that Superintendent Kerestes, Deputy Superintendent Beggs, Dr. Weiner and Health Care Administrator Steinhart were personally involved in his medical treatment or the decision regarding what antibiotic to administer. Rather, Jacobs premises the liability of those defendants solely on the theory of respondeat superior.  As discussed above, liability under § 1983 cannot be based on respondeat superior. Capone, 868 F.2d at 106.  Moreover, a claim of deliberate indifference to the plaintiff's medical needs cannot lie against the Superintendent or Deputy Superintendent, non-physicians, because the plaintiff alleges that he was under the care of a prison physician.[5]  Durmer, 991 F.2d at 69. As for Dr. Lisiak, Jacob is merely taking issue with Dr. Lisiak's medical judgment. In sum, negligence, unsuccessful medical treatment, or medical

---

5.  Also, there are not allegations in the complaint that Defendants Holly and Steinhart had the legal authority to prescribe medications.  A mere registered nurse, in contrast to a certified registered nurse practitioner, cannot prescribe medications in Pennsylvania.  In fact even a certified registered nurse practitioner can only prescribe medication after consulting with a licensed physician. 49 Pa.Code § 21.283.  Furthermore, there are no allegations that HCA Steinhart was a licensed physician.

malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference.  See Durmer v. O'Carroll, 991 F.2d at 69.  Finally, insofar as Jacobs is suing Defendant Holly because she denied his grievance that conduct does not provide a basis for liability under § 1983.

         For the reasons set forth above, the motions to dismiss filed by the Corrections Defendants and Medical Defendants will be granted and the instant complaint will be dismissed, without prejudice, for failure to state a claim on which relief may be granted pursuant 28 U.S.C. § 1915(e)(2)(B)(ii).  Although the complaint as filed fails to state a cause of action against the defendants, it is possible that the deficiencies may be remedied by amendment.  Consequently, Jacobs will be granted such opportunity.  Jacobs is also advised that the amended complaint must be complete in all respects.  It must be a new pleading which stands by itself without reference to the complaint already filed. Such amended complaint should set forth his claims in short, concise and plain statements.  It should specify which actions are alleged as to which defendants.  If Jacobs fails to file an amended complaint adhering to the standards set forth above, this case will be closed.

An appropriate order will be entered.